

FILED
10/8/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AXK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 1:25-cr-00655 |
| | ) | Judge April M. Perry |
| | ) | Case No. Magistrate Judge Beth W. Jantz |
| v. | ) | RANDOM / Cat. 3 |
| | ) | |
| | ) | <u>Violations</u>: Title 18, United States |
| CARL FIORAVANTI, and | ) | Code, Sections 2, 1001(a), 1341, and |
| ALLIANCE ENVIRONMENTAL | ) | 1343; Title 42, United States Code, |
| CONTROL, INC. | ) | Section 7413(c)(1) |

## COUNT ONE

The SPECIAL APRIL 2024 GRAND JURY charges:

1.      At times material to this indictment:

        a.      Asbestos was a heat-resistant mineral fiber that had been used in insulation and fire-retardant products. The inhalation of asbestos fibers may cause debilitating or fatal diseases such as mesothelioma, asbestosis, and lung cancer.

        b.      In or about 1971, asbestos was designated as a hazardous air pollutant under the federal Clean Air Act, 42 U.S.C. § 7412, and regulations promulgated by the United States Environmental Protection Agency ("USEPA") pursuant to the Clean Air Act. These regulations were commonly known as the National Emission Standards for Hazardous Air Pollutants for asbestos ("asbestos NESHAP") and were codified at 40 C.F.R. Part 61, Subpart M. Asbestos NESHAP regulations that applied to demolition and renovation operations were set forth at 40 C.F.R. §§ 61.141, 61.145 and 61.150.

c. The asbestos NESHAP applied to any demolition operation that involved regulated asbestos-containing material ("RACM") of at least 260 linear feet on pipes, at least 160 square feet on other facility components, or at least 35 cubic feet once removed from any facility components. 40 C.F.R. § 61.145(a)(1).

d. RACM was defined to include friable asbestos-containing material ("ACM") and, among other things, certain types of nonfriable ACM that have a high probability of becoming crumbled, pulverized, or reduced to powder by the forces expected to act on the material during the course of demolition operations. 40 C.F.R. § 61.141 (definition of "RACM").

e. The asbestos NESHAP regulations applicable to demolition operations applied to each "owner or operator of a demolition or renovation activity," which was defined to include any person who owns, leases, operates, controls, or supervises the facility being demolished, or any person who owns, leases, operates, controls, or supervises the demolition operation, or both. 40 C.F.R. § 61.141.

f. Among other things, the asbestos NESHAP imposed the following requirements on owners and operators of demolition activity in Illinois:

(i) At least 10 working days before asbestos stripping or removal work or any other activity began (including site preparation that would break up, dislodge or similarly disturb asbestos material), each owner or operator of a demolition activity was required to notify the Illinois Environmental Protection Agency ("IEPA") about the project. The notification was required to be made by mailing a fully completed two-page written form,

which was commonly known as a "10-Day Notice," to the IEPA. On the 10-Day Notice, each owner or operator was required to provide, among other data, both (A) the quantities of RACM, both friable and nonfriable, to be removed as part of the demolition activity; and (B) the scheduled starting and completion dates of asbestos removal work (including any other activity, such as site preparation that would break up, dislodge, or similarly disturb asbestos material). 40 C.F.R. § 61.145(b).

(ii)     The owner or operator was required to remove all RACM before performing any activity that would break up, dislodge, or similarly disturb the material or preclude access to the material for subsequent removal. 40 C.F.R. § 61.145(c)(1).

(iii)     The owner or operator was required to adequately wet all RACM and ensure that it remained wet until it was collected, contained or treated in preparation for disposal. 40 C.F.R. § 61.145(c)(6)(i).

(iv)     The owner or operator was required to carefully lower all RACM to the ground and floor, making sure not to drop, throw, slide, or otherwise damage or disturb the material. 40 C.F.R. § 61.145(c)(6)(ii).

(v)     The owner or operator was required to ensure all asbestos-containing waste material generated as part of the demolition activity was deposited as soon as practical at a waste disposal site operated in accordance with the asbestos NESHAP. 40 C.F.R. § 61.150(b).

g.      The Lake Behavioral Hospital ("LBH") site consisted of a campus of both used and unused buildings located at or near 2615 Washington Street, Waukegan, Illinois. Company A, which was headquartered in New York, owned, operated and controlled the LBH site through subsidiary entities, including Company A-1. Company A-1 provided health care services at one building on the LBH site, while other buildings on the LBH site remained vacant and unused.

h.      Beginning no later than in or about 2022, Company A decided to demolish vacant and unused structures at the LBH site, including buildings known as the Nurse's Building, the Old Main Hospital, and the Boiler Plant. The approximate volume of RACM located within those structures, collectively, included:

(i)      30,650 linear feet of thermal system insulation on pipes;

(ii)     288,475 square feet of floor tile and mastic;

(iii)    134,500 square feet of spray-on fireproofing in the Old Main Hospital;

(iv)    87,000 square feet of plaster ceiling materials in the Nurse's Building;

(v)     900 square feet of transite in the Old Main Hospital;

(vi)    5,634 square feet of tank insulation;

(vii)   89 fire doors in the Old Main Hospital; and

(viii)  1,500 square feet of duct insulation in the Old Main Hospital.

i.      Pursuant to the asbestos NESHAP, the RACM at the LBH site had to be removed, stored and disposed of in accordance with the requirements of the asbestos NESHAP before the buildings containing the RACM were demolished.

4

j.      Defendant ALLIANCE ENVIRONMENTAL CONTROL, INC. ("ALLIANCE"), was a for-profit Illinois corporation, the primary business activity of which included the commercial abatement of ACM.

k.      Defendant CARL FIORAVANTI owned, operated and controlled ALLIANCE. FIORAVANTI prepared bid proposals and entered into contracts on behalf of ALLIANCE, controlled ALLIANCE's finances, submitted 10-Day Notices on behalf of ALLIANCE, assigned ALLIANCE employees to work sites, and, through supervisors, directed the work assignments of ALLIANCE employees.

l.      In or about late 2022 or early 2023, FIORAVANTI, on behalf of ALLIANCE, caused ALLIANCE to contract with Company A-1 to fully abate the RACM located at the LBH site in exchange for $1,780,770. Full abatement of the RACM in each building was required to occur before demolition of the building. It was a material term of the contract that ALLIANCE would fully comply with all of the requirements of the asbestos NESHAP, as well as other applicable federal, State and local laws.

m.      Under the contract between ALLIANCE and Company A-1, it was contemplated that ALLIANCE would be paid in installments during the course of its abatement work on the LBH demolition project. Payment by Company A to ALLIANCE for completed work was conditioned, among other things, on ALLIANCE providing Company A with an "air sampling clearance report," which consisted of data verifying that, post-abatement, the ambient air in areas from which ALLIANCE

5

purportedly removed all RACM had been sampled, scientifically analyzed, and found to contain asbestos fibers at a concentration below a specified regulatory threshold.

n.     In January 2023, Company A's representative on the LBH demolition project, Individual A, explicitly told FIORAVANTI that asbestos abatement should not begin until the City of Waukegan (the "City") issued a demolition permit for the LBH demolition project, and FIORAVANTI acknowledged his understanding that no asbestos abatement work should begin until the City issued a demolition permit for the LBH demolition project.

2.     Beginning no later than in or about February 2023, and continuing until at least November 2023, at Waukegan, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property from, Company A by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, as further described below.

3.     It was part of the scheme that FIORAVANTI caused ALLIANCE to knowingly violate multiple asbestos NESHAP requirements at the LBH demolition project, concealed ALLIANCE's violations of the asbestos NESHAP from Company A (including Company A-1 and Individual A), and made false statements to Company A (including Individual A).

6

4.    It was further part of the scheme that, on or about February 7, 2023, FIORAVANTI directed an ALLIANCE work crew to begin stripping RACM from facility components within the Nurse's Building, even though FIORAVANTI knew both that (a) ALLIANCE had not yet submitted a 10-Day Notice to IEPA for the LBH demolition project, and (b) the City had not yet issued a demolition permit for the project.

5.    It was further part of the scheme that, on or about February 7, 2023, after Individual A questioned FIORAVANTI about why ALLIANCE workers were at the LBH site and reminded FIORAVANTI that abatement work should not begin until the City issued the demolition permit for the project, FIORAVANTI falsely told Individual A that the ALLIANCE work crew at the LBH site was only engaged in site preparation work and that no actual abatement activity was taking place.

6.    It was further part of the scheme that, on or about February 8, 2023, FIORAVANTI instructed Individual B, ALLIANCE's foreman in charge of the ALLIANCE workers at the LBH site, to begin stripping and removing RACM within the Nurse's Building, namely, floor tiles located within the Nurse's Building, knowing that the actual abatement work was not yet permitted to begin and that he already had falsely told Individual A that actual abatement work had not begun.

7.    It was further part of the scheme that, on or about February 8, 2023, in order to conceal from Company A the fact that ALLIANCE was abating RACM at the LBH site, FIORAVANTI instructed Individual B to store accumulated bags of asbestos-containing waste material at the Nurse's Building for the time being, as

7

opposed to placing them in an outside dumpster for disposal, because the appearance of asbestos waste dumpsters at the site might have revealed the fact that ALLIANCE was actively abating RACM at the LBH site.

8.     It was further part of the scheme that, by no later than on or about February 9, 2023, ALLIANCE workers, at the direction of FIORVANTI and Individual B, began abating RACM at the LBH site on a near daily basis, excluding weekends and Holidays. Per FIORAVANTI's direction to Individual B, the ALLIANCE workers stored bags of removed and stripped RACM within rooms at the Nurse's Building.

9.     It was further part of the scheme that, during February and March 2023, in order to conceal from Company A and IEPA the fact that RACM abatement already was taking place at the LBH site, FIORAVANTI intentionally refrained from submitting a 10-Day Notice to IEPA for the LBH demolition project.

10.    It was further part of the scheme that, in or about February 2023, in order to conceal from Company A the fact that ALLIANCE was abating RACM at the LBH site, FIORAVANTI instructed Individual B to falsely inform third parties observing the LBH site from outside the security perimeter that ALLIANCE workers were not abating RACM and, instead, were salvaging useful materials from the LBH site. FIORAVANTI further instructed Individual B to ensure that ALLIANCE workers engaged in abating RACM at the LBH site likewise did not disclose to the third parties that ALLIANCE was engaged in RACM abatement at the LBH site.

11.     It was further part of the scheme that FIORAVANTI remained in frequent communication with Individual B about the ongoing status of ALLIANCE's RACM abatement activity at the LBH site and continued to direct the activities of Individual B and other ALLIANCE employees at the LBH site.

12.     It was further part of the scheme that, after Individual A notified FIORAVANTI that the City had issued the demolition permit for the LBH demolition project on or about March 8, 2023, FIORAVANTI intentionally refrained from informing Company A, Company A-1 and Individual A that, in fact, ALLIANCE already had commenced abating RACM at the LBH site on or about February 9, 2023.

13.     It was further part of the scheme that, on or about March 14, 2023, FIORAVANTI attended an in-person "kickoff" meeting at the LBH site that was also attended by Individual A, the general contractor hired by Company A to oversee the demolition project ("General Contractor"), and the demolition contractor hired to demolish the unused buildings at the LBH site ("Demolition Contractor"). During the meeting, in order to conceal the fact that ALLIANCE had already initiated RACM abatement at the LBH site, FIORAVANTI made statements that falsely indicated to the other meeting participants that ALLIANCE had not yet initiated abating RACM at the LBH site, and FIORAVANTI did not inform the meeting participants that ALLIANCE had been abating RACM since on or about February 9, 2023.

14.     It was further part of the scheme that, on or about March 24, 2023, FIORAVANTI falsely informed the General Contractor in writing that ALLIANCE began working in the Nurse's Building on or about March 15, 2023.

9

15.     It was further part of the scheme that, on or about April 3, 2023, FIORAVANTI, on behalf of ALLIANCE, transmitted to Company A an invoice for an initial payment of $119,000, which, pursuant to the contract between ALLIANCE and Company A-1, was required to be made prior to ALLIANCE starting any work at the LBH site.

16.     It was further part of the scheme that, on or about April 4, 2023, after being asked by an IEPA official ("IEPA Employee A") whether any asbestos abatement activity was taking place at the LBH site, FIORAVANTI falsely told IEPA Employee A that: (a) ALLIANCE workers at the LBH site were engaged only in site preparation; (b) no abatement of ACM had yet taken place; and (c) abatement of ACM would not begin for several more weeks.

17.     It was further part of the scheme that, on or about April 4, 2023, FIORAVANTI submitted to IEPA a 10-Day Notice for the LBH site that falsely identified the date upon which RACM abatement would begin as April 7, 2023.

18.     It was further part of the scheme that, on or about April 7, 2023, at FIORAVANTI's direction, ALLIANCE began to dispose of accumulated bags of asbestos-containing waste material from the LBH site by placing those bags in dumpsters for ultimate disposal at an appropriate landfill.

19.     It was further part of the scheme that, on or about April 8, 2023, FIORAVANTI falsely informed IEPA Employee A that ALLIANCE employees at the LBH demolition project were bagging up and placing in dumpsters some loose and

historically water-damaged ACM as a result of "cleanup" activity, but that ALLIANCE had "[a] ways to go" before it could begin "abatement full work."

20. It was further part of the scheme that, on various dates between in or about April 2023 and in or about September 2023, FIORAVANTI, on behalf of ALLIANCE, transmitted to Company A an invoice for payment for asbestos abatement work purportedly performed by ALLIANCE at the LBH site.

21. It was further part of the scheme that, on various dates between in or about April 2023 and in or about September 2023, FIORAVANTI, on behalf of ALLIANCE, transmitted to Company A a false air sampling report in support of an invoice for payment for asbestos abatement work purportedly performed by ALLIANCE at the LBH site.

22. It was further part of the scheme that, as a result of his submission of invoices and false air sampling reports, FIORAVANTI induced Company A to make payments, in varying amounts, to ALLIANCE for asbestos abatement work purportedly performed by ALLIANCE at the LBH site.

23. It was further part of the scheme that, in or about September 2023, ALLIANCE, at FIORAVANTI's direction, permanently departed the LBH site and ceased working at the LBH demolition project knowing that ALLIANCE had failed to fully remove all of the RACM at the LBH site, including spray-on fireproofing in the Old Main Hospital and thermal system insulation in both the Old Main Hospital and the Boiler Plant.

24.     It was further part of the scheme that, on or about September 19, 2023, FIORAVANTI, on behalf of ALLIANCE, emailed to Company A a letter dated September 15, 2023, in which FIORAVANTI falsely claimed that ALLIANCE had fully abated and properly disposed of all RACM at the LBH site, and that the full abatement had been verified through a post-abatement inspection and third-party air sampling.

25.     It was further part of the scheme that, when FIORAVANTI and ALLIANCE falsely certified that ALLIANCE had fully removed all RACM from the LBH site, FIORAVANTI and ALLIANCE did so with the expectation that RACM left by ALLIANCE at the LBH site would be disposed of as regular demolition debris by the Demolition Contractor.

26.     On or about April 24, 2023, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, for the purpose of executing the scheme, and attempting to do so, knowingly caused to be placed in a post office and an authorized depository for mail matter an item to be sent and delivered by the United States Postal Service, namely, an envelope containing a check in the amount of approximately $119,000 made payable from Company A to ALLIANCE ENVIRONMENTAL CONTROL, INC., and addressed to a Post Office Box in Lansing, Illinois;

In violation of Title 18, United States Code, Section 1341.

12

## COUNTS TWO THROUGH SEVEN

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 25 of Count One of this Indictment are re-alleged and incorporated herein for each of Counts Two through Seven.

2.    On or about each of the dates set forth below, at Lansing, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an email message from FIORAVANTI, using Fioravanti Email Account 1, on behalf of ALLIANCE, to Company A that transmitted an invoice for payment:

| Count | Approximate Date Emailed | Approximate Invoice Amount |
|---|---|---|
| Two | April 3, 2023 | $119,000 |
| Three | April 28, 2023 | $474,000 |
| Four | May 31, 2023 | $237,000 |
| Five | June 29, 2023 | $315,000 |
| Six | August 1, 2023 | $310,000 |
| Seven | September 12, 2023 | $325,000 |

Each in violation of Title 18, United States Code, Section 1343.

## COUNTS EIGHT THROUGH ELEVEN

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 25 of Count One of this Indictment are re-alleged and incorporated herein for each of Counts Eight through Eleven.

2.     On or about each of the dates set forth below, at Lansing, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, an email message from FIORAVANTI, using Fioravanti Email Account 1, on behalf of ALLIANCE, to Company A that transmitted a false air sampling clearance report:

| Count | Approximate Date Emailed |
|-------|--------------------------|
| Eight | June 1, 2023 |
| Nine | July 6, 2023 |
| Ten | August 3, 2023 |
| Eleven | September 19, 2023 |

Each in violation of Title 18, United States Code, Section 1343.

14

## **COUNTS TWELVE THROUGH SIXTEEN**

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 25 of Count One of this Indictment are re-alleged and incorporated herein for each of Counts Twelve through Sixteen.

2.      On or about each of the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals, namely, interstate wire transfers in the form of Automated Clearing House ("ACH") payments in the below amounts from a Company A bank account to a bank account (ending in 6324) that ALLIANCE maintained at Fifth Third Bank:

| Count | Date of ACH Transfer | Amount of ACH Transfer |
| --- | --- | --- |
| Twelve | May 12, 2023 | $474,000 |
| Thirteen | June 14, 2023 | $237,000 |
| Fourteen | July 24, 2023 | $315,000 |
| Fifteen | August 10, 2023 | $310,000 |
| Sixteen | October 10, 2023 | $325,000 |

Each in violation of Title 18, United States Code, Section 1343.

15

## COUNT SEVENTEEN

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.      The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.      From in or about February 2023 through and including in or about early April 2023, at Waukegan, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly violated the asbestos NESHAP by stripping and removing RACM from facility components in the Nurse's Building at the LBH demolition project prior to submitting a 10-Day Notice to the IEPA, in violation of 40 C.F.R. § 61.145(b).

In violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2.

16

## **COUNT EIGHTEEN**

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.     The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.     From in or about February 2023 through and including in or about early April 2023, at Waukegan, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly violated the asbestos NESHAP by failing to ensure that ALLIANCE removed all asbestos-containing waste material, generated through the stripping and removal of RACM from the Nurse's Building at the LBH demolition project, was deposited as soon as practical at a waste disposal site operated in accordance with the asbestos NESHAP, in violation of 40 C.F.R. § 61.150(b).

In violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2.

## COUNT NINETEEN

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.      The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.      In or about November 2023, at Waukegan, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly violated the asbestos NESHAP by failing to remove all RACM from the Old Main Hospital before activity by the Demolition Contractor began that broke up, dislodged, and similarly disturbed the material and precluded access to the material for subsequent removal, in violation of 40 C.F.R. § 61.145(c)(1).

In violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2.

18

## COUNT TWENTY

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.       The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.       In or about November 2023, at Waukegan, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly violated the asbestos NESHAP by failing to adequately wet all RACM from the Old Main Hospital and ensure that it remained wet until collected, contained and treated in preparation for disposal, in violation of 40 C.F.R. § 61.145(c)(6)(i).

In violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2.

## **COUNT TWENTY-ONE**

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.      The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.      In or about November 2023, at Waukegan, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI and
ALLIANCE ENVIRONMENTAL CONTROL, INC.,

defendants herein, knowingly violated the asbestos NESHAP by failing to carefully lower to the ground and floor RACM from the Old Main Hospital, and to not drop, throw, slide and otherwise damage and disturb the material, in violation of 40 C.F.R. § 61.145(c)(6)(ii).

In violation of Title 42, United States Code, Section 7413(c)(1), and Title 18, United States Code, Section 2.

## COUNT TWENTY-TWO

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.     The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.     During 2023, IEPA, pursuant to a delegation of authority from the USEPA, enforced the asbestos NESHAP within the State of Illinois.

3.     From in or about late March 2023 through early April 2023, IEPA Employee A conducted a civil investigation of the asbestos abatement activity occurring at the LBH demolition project, including whether violations of the asbestos NESHAP had occurred, or were occurring, at the LBH demolition project.

4.     The timing and scope of the work ALLIANCE had performed at the LBH demolition project up to and including April 8, 2023, was material to the IEPA investigation.

5.     On or about April 8, 2023, at Lansing, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARL FIORAVANTI,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation to IEPA Employee A in a matter within the jurisdiction of the USEPA, an agency within the executive branch of the government of the United States, when, in an email transmitted using Fioravanti Email Account 1, FIORAVANTI represented the following:

a.     FIORAVANTI stated that ALLIANCE workers at the LBH demolition project had not begun the full abatement of RACM at the LBH demolition project; and

b.     FIORAVANTI transmitted to IEPA Employee A a 10-Day Notice for the LBH demolition project that falsely identified April 7, 2023, as the anticipated start date for the abatement of RACM at the LBH demolition project.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TWENTY-THREE

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.     The allegations of sub-paragraphs 1(a) through 1(m) of Count One of this Indictment are re-alleged and incorporated herein.

2.     In or about November 2023, the Occupational Safety and Health Administration ("OSHA") initiated a civil investigation of the LBH demolition project to determine whether laws, rules and regulations under the jurisdiction of OSHA were violated at the LBH demolition project.

3.     On or about March 8, 2024, as part of the OSHA investigation, FIORAVANTI was questioned by OSHA employees during an administrative proceeding where FIORAVANTI was under oath.

4.     The timing and scope of the work ALLIANCE performed during the LBH demolition project was material to the investigation.

5.     On or about March 8, 2024, at Chicago, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of OSHA, an agency within the executive branch of the government of the United States, when he stated the following:

23

      a.     FIORAVANTI stated that, by the time of the "kickoff" meeting, which occurred on or about March 14, 2023, ALLIANCE had not yet started abating RACM at the LBH demolition project;

      b.     FIORAVANTI stated that he had hired a third-party air sampling company, Company B, to conduct air sampling at the LBH demolition project; and

      c.     FIORAVANTI stated that he identified for the owner of Company B, Individual MH, the locations at the LBH demolition project where Company B should take air samples.

In violation of Title 18, United States Code, Section 1001(a)(2).

**COUNT TWENTY-FOUR**

The SPECIAL APRIL 2024 GRAND JURY further charges:

1.      The allegations of sub-paragraphs 1(a) through 1(l) of Count One of this Indictment are re-alleged and incorporated herein.

2.      During 2024, the USEPA's Criminal Investigation Division ("EPA-CID") initiated a criminal investigation to determine whether federal criminal offenses were committed in relation to the LBH demolition project, including whether criminal violations of the asbestos NESHAP had occurred at the LBH demolition project.

3.      On or about May 30, 2024, EPA-CID Special Agents conducted an in-person interview of FIORAVANTI at ALLIANCE's offices in Lansing, Illinois.

4.      The timing and scope of the work ALLIANCE had performed at the LBH demolition project was material to the EPA-CID investigation.

5.      On or about May 30, 2024, at Lansing, in the Northern District of Illinois, Eastern Division,

CARL FIORAVANTI,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the USEPA, an agency within the executive branch of the government of the United States, when he stated the following:

>       a.      FIORAVANTI stated that, during the LBH demolition project, Individual B told FIORAVANTI when ALLIANCE workers had removed all RACM from various portion of the Old Main Hospital; and

25

b.      FIORAVANTI stated that no abatement of RACM occurred during the first six weeks that ALLIANCE employees were at the LBH demolition project.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY